IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES METCALF, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:11-CV-3014-D |
| VS. | § | |
| | § | |
| DEUTSCHE BANK NATIONAL | § | |
| TRUST COMPANY, AS TRUSTEE | § | |
| FOR THE HOLDERS OF THE FIRST | § | |
| FRANKLIN MORTGAGE LOAN | § | |
| TRUST 2005-FF2, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed case arising from an attempted foreclosure on the property ("Property") of plaintiffs James Metcalf and Barbara Cline ("Cline") by defendants Deutsche Bank National Trust Company ("Deutsche Bank"), as Trustee for the Holders of the First Franklin Mortgage Loan Trust 2005-FF2 (the "Trust"), Bank of America, N.A. ("BOA"), and Recontrust Company NA ("Recontrust"), defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted, or, alternatively, for a more definite statement under Rule 12(e). For the reasons that follow, the court grants the Rule 12(b)(6) motion, denies the alternative Rule 12(e) motion as moot, and allows plaintiffs to replead.

I

In 2004 Cline executed a note, and both plaintiffs made and delivered a deed of trust regarding the Property.[1]  Both the note and deed of trust named First Franklin Financial Corporation ("First Franklin") as the lender.  Plaintiffs were notified that the Property would be foreclosed on in October 2011.  The notice identified the current mortgagee as Deutsche Bank, as Trustee of the Trust.  BOA, acting as attorney-in-fact for Deutsche Bank, purportedly executed the appointment of Recontrust as the substitute trustee to conduct the foreclosure sale.  In a letter from Recontrust to plaintiffs, Recontrust represented that BOA is "the creditor to whom the debt is owed."  Pet. 6.

On the eve of foreclosure, plaintiffs filed suit in a Texas court, asserting claims of quiet title, estoppel, declaratory judgment,[2] and, concurrently or in the alternative, breach of contract.  They request damages, exemplary damages, and fees and costs.

Plaintiffs allege on two grounds that defendants lack authority to foreclose on the Property, which serves as the basis for plaintiffs' quiet title, estoppel, and declaratory judgment claims (but not their breach of contract claim).  First, plaintiffs assert that Deutsche Bank could not have acquired an interest in the Property on behalf of the Trust because First

---

[1]In deciding defendants' Rule 12(b)(6) motion, the court construes plaintiffs' original petition in the light most favorable to them, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in their favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[2]Plaintiffs seek a declaratory judgment under the Texas statute, Tex. Civ. Prac. & Rem. Code Ann. § 37.003 (West 1985)  As the court explains *infra* at note 15, on removal, this claim was converted into one brought under the federal Declaratory Judgment Act.

Franklin had already previously assigned its interest to another entity.  Plaintiffs allege that, on May 2, 2005, First Franklin filed an "Assignment of Deed of Trust" (dated April 26, 2005) that purported to assign the note and deed of trust to Goldman Sachs Mortgage Company ("Goldman Sachs").  Although Rockwall County property records do not show an assignment of the note or deed of trust back to First Franklin, First Franklin executed a second "Assignment of Deed of Trust" on October 31, 2005 that purported to assign the same note and deed of trust to Deutsche Bank, as Trustee for the Trust.

Plaintiffs' second argument focuses on the securitization of their note and deed of trust.  According to plaintiffs, the Trust "is a New York common law asset-backed trust," and "[a]sset-backed trusts are independent entities created for the purpose of holding mortgage loans or similar assets that will be converted into mortgage-backed securities, which are saleable securities."  *Id.* at 3.  Asset-backed trusts are governed by their trust documents, particularly the "Pooling and Service Agreement" ("PSA").  In addition to providing how a trust will be set up and managed, the PSA establishes the timing and chain of title in which mortgage loans are to be acquired.  Plaintiffs allege that because defendants failed to properly transfer and deposit the note and deed of trust in the Trust according to the PSA's timing and chain of title requirements, their note and deed of trust are not part of the Trust, and Deutsche Bank, as trustee for the Trust, lacks authority to foreclose on property that is not part of the Trust.

Regarding timing, plaintiffs contend that the PSA establishes a "closing date" or "startup date"—"the date by which a trust's assets are to be acquired."  *Id.*  And, in order to

be treated as a Real Estate Mortgage Investment Conduit ("REMIC") under the Internal Revenue Code, a trust must acquire its assets by the close of the third month after the closing date. The Trust's closing date was set for April 28, 2005. It was thus required to acquire its assets by July 31, 2005 to qualify for REMIC status. Plaintiffs aver that the Trust did not acquire their note and deed of trust until October 31, 2005, when First Franklin purportedly executed a second "Assignment of Deed of Trust" to Deutsche Bank. They allege that because this assignment "exceeded the authority set out in the Trust's regulatory documents," it "could not have happened." *Id.* at 4.

Regarding the chain of title, plaintiffs assert that "the PSA establishes that the depositor, GS Mortgage Securities Corp. [("GS Mortgage")], concurrently with the execution of the PSA, '[is obligated to] sell[], transfer[], assign[], set[] over and otherwise convey[] to the Trustee for the benefit of the Certificateholders, without recourse, all the right, title and interest of the Depositor in and to the Trust Fund.[']" *Id.* "In other words, all assets of the Trust [are] to be acquired from . . . GS Mortgage[.]" *Id.* Plaintiffs also assert that defendants and GS Mortgage made the following representation in the PSA:

> Immediately prior to the transfer and assignment by the Depositor [GS Mortgage] to the Trustee on the Closing Date, the Depositor had good title to, and was the sole owner of each Mortgage Loan, free of any interest of any other Person, and the Depositor has transferred all right, title and interest [.]"

*Id.* at 5. According to plaintiffs, this further requires that GS Mortgage own the mortgage loan before transferring and assigning it to the Trust by the closing date of April 28, 2005.

But, on April 26, 2005, First Franklin assigned the deed of trust to Goldman Sachs,[3] and there is no record in the Rockwall County property records of any assignment from Goldman Sachs to any other party from April 26 to 28, 2005.

Plaintiffs also assert, "[c]oncurrently or in the alternative," a breach of contract claim. *Id.* at 9.  They allege that, "[n]otwithstanding the above," an attachment to the note, a "Non Impound Notice," was breached.  *Id.* at 6.  The "Non Impound Notice" allegedly states that the "lender for this mortgage will not impound for real estate taxes and homeowners insurance." *Id.*  In March 2010 plaintiffs received a letter from Home Loan Services, Inc. ("Home Loan") informing them that their monthly mortgage payment of $2,123.43 was increasing by 77%, to $3,758.67, allegedly due entirely to taxes and insurance.  They also assert that "this letter injected yet another unidentified party—[Home Loan]—into the discussion of who actually owned the Note." *Id.*

After defendants removed this case based on diversity of citizenship, defendants filed the instant motion to dismiss under Rule 12(b)(6), or, alternatively, for a more definite statement under Rule 12(e).  Defendants maintain that plaintiffs' state-court original petition ("petition") fails to state a plausible claim for relief because plaintiffs lack standing to challenge the assignments and PSA and they have failed to plead necessary elements for their causes of action.  Plaintiffs oppose this motion.

---

[3]This first "Assignment of Deed of Trust" was then filed on May 2, 2005.

II

To survive defendants' Rule 12(b)(6) motion, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff[s] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).

Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'. . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor [will] a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

III

Defendants challenge plaintiffs' standing to contest the assignments of the note and deed of trust and compliance with the terms of the PSA.

A

Defendants argue under Rule 12(b)(6)[4] that plaintiffs lack standing to challenge the validity of the assignments and to assert noncompliance with the PSA because they were not parties or third-party beneficiaries of the assignments or the PSA.  Defendants cite several cases that hold that "[p]laintiff[s] ha[ve] no standing to contest the various assignments as [they were] not a party to the assignments," *Eskridge v. Federal Home Loan Mortgage Corp.*, 2011 WL 2163989, at *5 (W.D. Tex. Feb. 24, 2011), and that "to the extent that [p]laintiffs seek to base claims on violations of the PSA, [p]laintiffs were not parties to the PSA and lack any standing to assert such claims," *Long v. One West Bank, FSB*, 2011 WL 3796887, at *4 (N.D. Ill. Aug. 24, 2011).

B

The court considers initially the second ground on which plaintiffs rely for their claims for quiet title, estoppel, and declaratory judgment: that because defendants failed to comply with the PSA's requirements, the Property is not a part of the Trust and Deutsche Bank, as trustee of the Trust, lacks authority to foreclose on the Property.

---

[4]Defendants recognize that this is a merits-based ground for dismissal under Rule 12(b)(6) for failure to state a claim, as opposed to an allegation that plaintiffs lack constitutional standing under Rule 12(b)(1) or prudential standing under Rule 12(b)(6).

This argument is based on the alleged breach of the PSA, in particular, provisions regarding the securitization of mortgage loans.  To prove a breach of a contract under Texas law, "a party must prove its privity to the agreement, or that it is a third-party beneficiary." *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 210 (Tex. App. 2010, no pet.) (citing *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 738 (Tex. App. 2007, pet. denied)).  Plaintiffs lack standing to challenge this alleged lack of compliance with the PSA because they have not pleaded facts that allow the court to draw the reasonable inference that they are in privity with or are third-party beneficiaries of the PSA.  *See, e.g., Deerinck v. Heritage Plaza Mortg. Inc.*, 2012 WL 1085520, at *5 & n.10 (E.D. Cal. Mar. 30, 2012) ("Plaintiffs lack standing to challenge the process in which their mortgage was securitized because they are not a party to the PSA.  Plaintiffs were not investors of the . . . . Trust, nor are they third-party beneficiaries of the PSA, thus, they do not have standing to challenge an alleged breach of that agreement.") (collecting cases); *Edwards v. Ocwen Loan Servicing, LLC*, 2012 WL 844396, at *5 (E.D. Tex. Mar. 12, 2012) (holding in response to argument that defendants could not establish that valid PSA would authorize foreclosure that, "[a]s multiple district courts have agreed, a mortgagor does not have standing to challenge [the] pooling and service agreements because the mortgagor is not a party to the . . . agreements.") (collecting cases); *In re Walker*, 466 B.R. 271, 284-85 nn.28 & 29 (Bankr. E.D. Pa. 2012) ("[A] judicial consensus has developed holding that a borrower lacks standing to (1) challenge the validity of a mortgage securitization or (2) request a judicial determination that a loan assignment is invalid due to noncompliance with a pooling

and servicing agreement, when the borrower is neither a party to nor a third party beneficiary of the securitization agreement, *i.e.,* the PSA.") (collecting cases); *Bittinger v. Wells Fargo Bank NA*, 744 F.Supp.2d 619, 625-26 (S.D. Tex. 2010) (holding that plaintiffs "ha[ve] no ability under Texas law to sue for breach of [the PSA]" because they "[were] not a party to this agreement and did not become a party, agent or assignee of a party, or a third-party beneficiary of the agreement").

Moreover, it is unclear under Texas law that the assignment becomes *invalid* merely because it conflicts with the PSA, was made after the Trust was closed, or that the trust fails to qualify for REMIC status. *See Long*, 2011 WL 3796887, at *4 (noting that "Plaintiffs have also not cited any precedent holding that an assignment is invalid simply because it conflicts with a PSA and it is irrelevant to the validity of the assignment whether or not it complied with the PSA"). Because plaintiffs' claims of quiet title, estoppel, and declaratory judgment are based in part on defendants' alleged failure to comply with the PSA requirements, the court dismisses these claims in part.[5]

## C

The court now considers the second ground on which plaintiffs rely for their claims for quiet title, estoppel, and declaratory judgment. The gravamen of this ground is that Deutsche Bank could not have acquired any interest in the Property from First Franklin in

---

[5]Plaintiffs' remaining claim of breach of contract regarding the "Non Impound Notice" does not appear to be based on defendants' alleged breach of the PSA and therefore is not being dismissed on this basis.

the alleged second "Assignment of Deed of Trust" because First Franklin had already conveyed its interest to Goldman Sachs.  Plaintiffs reason that, because Deutsche Bank is a stranger to the Property, it lacks authority to foreclose on it.

1

Defendants assert that plaintiffs lack standing to contest the assignment agreements because they were not a party to the assignments.  The court agrees.  "Courts in this circuit have repeatedly held that borrowers do not have standing to challenge the assignments of their mortgages because they are not parties to those assignments."  *See Garrett v. HSBC Bank USA, N.A.*, 2012 WL 1658796, at *2 (N.D. Tex. May 11, 2012) (Fitzwater, C.J.) (citing cases); *DeFranceschi v. Wells Fargo Bank, N.A.*, ___ F.Supp.2d ____, 2011 WL 3875338, at *5 (N.D. Tex. Aug. 31, 2011) (Means, J.); *see also, e.g., Eskridge*, 2011 WL 2163989, at *5.

Plaintiffs do have standing, however, to challenge defendants' authority to foreclose on the ground that foreclosure did not comply with the terms *of the deed of trust*.  Such a challenge does not contest assignment agreements to which plaintiffs were not parties, in privity, or third party beneficiaries; instead, it relies on the terms of the deed of trust that plaintiffs executed in favor of First Franklin.  Defendants derive their authority to foreclose from the power of sale in the deed of trust.

Texas courts have consistently held that the terms set out in a deed of trust must be strictly followed. As this Court has stated, "[a] trustee has no power to sell the debtor's property, except such as may be found in the deed of trust." Thus, when a foreclosure sale is held pursuant to the power granted in the deed of trust, the power of sale can only be exercised by those authorized in the instrument. The reason that "strictness" is required in following the terms of the power granted by the deed of trust is to protect the property of the debtor. Failure to follow the terms of the deed of trust will give rise to a cause of action to set aside the trustee's deed.

*Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982) (citations omitted).[6]  Many of the cases that state that borrowers lack standing to contest the assignments of their mortgages have examined whether the note or deed of trust permitted the assignment and foreclosure. *See Woods v. Bank of Am., N.A.*, 2012 WL 1344343, at *5

---

[6]*See also, e.g., Slaughter v. Qualls*, 162 S.W.2d 671, 675 (Tex. 1942) ("A trustee has no power to sell the debtor's property, except such as may be found in the deed of trust; and the powers therein conferred must be strictly followed.") (citing cases); *Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App. 1996, no writ) ("The power of the trustee to sell the deed for the parties is derived wholly from the trust instrument . . . . [A] trustee must strictly pursue the terms of the instrument, the provisions of law relative to such a sale, and the details prescribed as to the manner of the sale.") (citations omitted); *Harwath v. Hudson*, 654 S.W.2d 851, 854 (Tex. App. 1983, writ ref'd n.r.e.) ("[T]he right of a grantor of a deed of trust to have its provisions strictly complied with to effect a valid foreclosure sale is absolute. Since strict compliance was lacking in this case, the foreclosure sale was invalid."); 30 Tex. Jur. 3d *Deeds of Trust and Mortgages* § 138 (2012) ("When the exercise of a power of sale depends on the direction or request of a given person, that direction or request is indispensable to a valid exercise of the power. Where the deed of trust gives the holder of the underlying note or indebtedness the right to request a sale, the sale may be made at the request of the assignee of the note or indebtedness.") (footnote omitted); 15 Mike Baggett, *Texas Practice Series, Texas Foreclosure: Law and Practice* § 2.42, at 115(2001) ("Only the parties designated in the deed of trust may appoint a substitute trustee, although the deed of trust may grant this power to any subsequent holder of the indebtedness.") (footnotes omitted).

(N.D. Tex. Apr. 17, 2012) (Boyle, J.) ("MERS had the authority to assign the Deed of Trust, and the subsequent foreclosure on the Deed of Trust was effective," and "Plaintiff fails to allege how an assignment by MERS violates any terms or conditions of the Deed of Trust, or how any other defect in the foreclosure otherwise constitutes a breach of the contract."); *Edwards*, 2012 WL 844396, at \*5 ("The note at issue in this case specifically provided that the borrower understands that the note may be transferred and that, 'Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the Note Holder.'") (internal quotation marks omitted); *DeFranceschi*, 2011 WL 3875338, at \*4 ("Because the deed of trust specifically provided that MERS would have the power of sale, MERS had the power of sale that was passed to U.S. Bank upon MERS's assignment."); *Eskridge*, 2011 WL 2163989, at \*5 (stating that "[e]ven if she has standing, her allegations are without merit because MERS was given the authority to transfer the documents in the Deed of Trust").[7]

---

[7]In *In re Bailey*, 468 B.R. 464, 2012 WL 1192785 (Bankr. D. Mass. 2012), the court examined a similar contention under Massachusetts law, which authorizes a mortgage holder to foreclose on property without judicial authorization if the mortgage grants a power of sale. *See id.* at \*5. The debtor asserted in the case that Wells Fargo Bank, NA ("Wells Fargo") was not the holder of the mortgage and thus had no authority to foreclose on her property because Washington Mutual Bank ("Washington Mutual"), the entity that purportedly assigned the mortgage to Wells Fargo, had not acquired any rights in the mortgage to assign. *See id.* at \*2-3, \*6. The *Bailey* court concluded that "absent Wells Fargo's status as holder of the Mortgage, the Foreclosure Sale is void," and it held that the debtor could challenge the validity of the foreclosure sale through her request for declaratory judgment. *See id.* at \*6, \*8.

In reaching this decision, the *Bailey* court considered and distinguished the same arguments that defendants raise in this case. First, the court examined Wells Fargo's assertion that the debtor lacked standing to challenge the assignment of the mortgage. *See*

2

Although plaintiffs have standing to assert claims based on defendants' alleged noncompliance with the terms of the deed of trust, they have not alleged plausible claims on this basis. For example, plaintiffs have failed to plead the contents of the deed of trust, such as whether the deed of trust authorized First Franklin to assign the mortgage; whether Deutsche Bank qualified as an assignee of the mortgage, whether an assignee was authorized to appoint a trustee or substitute trustee to foreclose on the Property, and whether the deed of trust otherwise named Deutsche Bank as the trustee or substitute trustee. *Cf. Slaughter v. Qualls*, 162 S.W.2d 671, 675 (Tex. 1942) (holding that because deed of trust authorized

---

*id.* at *6. It reasoned that the debtor was not attacking the assignment itself (*e.g.*, arguing that the assignment was defective because of lack of consideration), but was instead "challeng[ing] Wells Fargo's assertion that Washington Mutual held the Mortgage at the time it executed the Assignment," and was arguing that "as a stranger to the Mortgage, Washington Mutual could not have passed any ownership rights in the Mortgage to Wells Fargo." *Id.* The *Bailey* court also considered "recent cases [that] have contained somewhat broader language to the effect that a borrower has no standing to challenge a mortgage assignment, as the borrower is neither a party to, nor a third-party beneficiary of, the assignment." *Id.* at *7 (citing cases). It distinguished this line of cases because "the Debtor [was] not, as previously discussed, challenging the Assignment *per se*" but was instead "question[ing] only whether the assignor had any rights in the Mortgage to transfer to the assignee." *Id.*

Second, the *Bailey* court examined cases in which "courts have found that . . . borrowers lacked standing to challenge a mortgage assignment based on an alleged breach of an underlying PSA, because the borrowers were neither parties to nor third-party beneficiaries under those agreements." *Id.* (citing cases). In the present case, this court relied on this type of argument to dismiss plaintiffs' claims based on the alleged breach of the PSA. *See supra* § III(B). *Bailey* distinguished these cases, concluding that they were inapposite to the debtor's argument. *Bailey* reasoned that "The Debtor's argument here is not based on the breach of an underlying contract to which she was not a party; instead, her argument is aimed at the ownership of the Mortgage at the time it was purportedly assigned." *Bailey*, 2012 WL 1192785, at *7.

sale only by trustee or duly-appointed substitute trustee after default, sale by a third party was unauthorized); *Burnett v. Mfr.'s Hanover Trust Co.*, 593 S.W.2d 755, 757 (Tex. Civ. App. 1979, writ ref'd n.r.e.) ("The Texas cases reveal that a foreclosure sale by a person not properly appointed as a substitute trustee according to the terms of the deed of trust is not merely an irregularity in the foreclosure proceedings. Rather, such sales have been declared void because they are not conducted within the authority conferred by the deed of trust.") (citing cases); *Lawson v. Gibbs*, 591 S.W.2d 292, 294 (Tex. Civ. App. 1979, no writ) ("An examination of the deed of trust . . . reveals that the 'legal owner and holder' of the note secured is the 'beneficiary.'  The deed of trust authorizes the beneficiary to appoint a substitute trustee, by designation in writing, who succeeds to all the rights and powers of the original trustee.").  Without such factual detail, the court is unable to conclude that plaintiffs' claims of quiet title, estoppel, and declaratory judgment are plausible.  The court therefore dismisses these claims to the extent they challenge defendants' authority to foreclose on the ground that Deutsche Bank did not receive any rights in the mortgage from First Franklin.[8] *See Twombly*, 550 U.S. at 570.

---

[8]The court does not suggest that a deed of trust assignment must be recorded.  This would be contrary to Texas law.  *See Bittinger*, 744 F.Supp.2d at 625 ("Under Texas law, there is no requirement that the deed of trust assignment be recorded.  And under Texas law, the ability to foreclose on a deed of trust is transferred when the note is transferred, not when an assignment of deed of trust is either prepared or recorded.") (citing *JWD, Inc. v. Fed. Ins. Co.*, 806 S.W.2d 327, 329-30 (Tex. App. 1991, no writ).  Instead, the court holds that plaintiffs can challenge whether Deutsche Bank received any interest in the loan on the basis that First Franklin had already conveyed its interest to another party.

D

In summary, plaintiffs' claims of quiet title, estoppel, and declaratory judgment are dismissed based on lack of standing or on the merits for failure to state a claim on which relief can be granted. Because the court is permitting plaintiffs to replead, it will address other grounds for dismissal that defendants have raised. By doing so, it may obviate the need to address pleading defects that could recur in the amended complaint and meritless arguments that could be included in a renewed motion to dismiss.

IV

The court considers first plaintiffs' quiet title claim.

A

A suit to quiet title is an equitable action, and the principal issue is "the existence of a cloud that equity will remove." *Bell v. Ott*, 606 S.W.2d 942, 952 (Tex. Civ. App. 1980, writ ref'd n.r.e.). The suit "enable[s] the holder of the feeblest equity right to remove from his way to legal title any unlawful hindrance having the appearance of a better right." *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App. 2000, pet. denied) (quoting *Bell*, 606 S.W.2d at 952) (internal quotation marks omitted). "Any deed, contract, judgment or other instrument not void on its face that purports to convey any interest in or make any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner." *Id.*; *see also Gordon v. W. Hous. Trees, Ltd.*, 352 S.W.3d 32, 42 (Tex. App. 2011, no pet.) ("A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the

- 15 -

owner of the property.") (citing *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App. 2009, no

pet.)). "The effect of a suit to quiet title is to declare invalid or ineffective the defendant[s']

claim to title." *Gordon*, 352 S.W.3d at 42.

"The elements of the claim for relief to quiet title are (1) an interest in a specific

property, (2) title to the property is affected by a claim by the defendant, and (3) the claim,

although facially valid, is invalid or unenforceable." *Bell v. Bank of Am. Home Loan

Servicing LP*, 2012 WL 568755, at *7 (S.D. Tex. Feb. 21, 2012) (citing *U.S. Nat'l Bank

Ass'n v. Johnson*, 2011 WL 6938507, at *3 (Tex. App. Dec. 30, 2011, no pet.) (mem. op.)).

"To quiet title in [their] favor, . . . plaintiff[s] 'must allege right, title, or ownership in himself

or herself with sufficient certainty to enable the court to see he or she has a right of

ownership that will warrant judicial interference.'" *Wells v. BAC Home Loans Servicing,

L.P.*, 2011 WL 2163987, at *4 (W.D. Tex. Apr. 26, 2011) (quoting *Wright*, 26 S.W.3d at

578). "[P]laintiff[s] . . . must prove and recover on the strength of [their] own title, not the

weakness of [their] adversary's title." *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App.

2001, no pet.) (citing *Alkas v. United Sav. Ass'n of Tex., Inc.*, 672 S.W.2d 852, 857 (Tex.

App. 1984, writ ref'd n.r.e.)). Plaintiffs, however, "[are] not required to trace [their] title to

either the sovereign or to a common source." *See, e.g., Katz v. Rodriguez*, 563 S.W.2d 627,

629-30 (Tex. Civ. App. 1977, writ ref'd n.r.e.) (citing cases).[9]

---

[9]In their motion, defendants cite cases that involve suits for trespass to try title. For
example, defendants state that "[a] prevailing party's remedy is title to, and possession of,
the real property interest at issue in the suit," *see* Ds. Br. 4, and they cite *Florey v. Estate of
McConnell*, 212 S.W.3d 439, 449 (Tex. App. 2006, no pet.). But *Florey* reached this

B

Plaintiffs allege that they "are the owner[s] of the [P]roperty . . . under a deed thereto recorded in the office of the Rockwall County Clerk." Pet. 2.  They assert that "[t]he failure of Defendants to obtain any interest in the obligations under the Note voided any title or power they might have under the Trust Deed, and rendered the Trust Deed unenforceable by them."  *Id.* at 8.  Plaintiffs posit that their legal title to the Property is clouded by "[their] inability . . . to safely discharge any lien of the Trust Deed against the [Property] in favor of proper assignees of the Note and Trust Deed, and the threat of multiple recoveries or attempts to recover against the [Property]."  *Id.*  They seek, *inter alia,* "an Order quieting title to the [Property] in favor of Plaintiffs and against Defendants, freeing title to the [Property] of the

---

conclusion in the context of a trespass to try title suit.  *See Florey*, 212 S.W.3d at 449 ("A trespass-to-try title suit seeks title and possession of real property[.]").  "Trespass to try title and suit to quiet title are two different causes of action."  *Fricks*, 45 S.W.3d at 327.  "A suit in trespass to try title is statutory and accords a legal remedy, while a suit to remove cloud or to quiet title accords an equitable remedy."  *Katz*, 563 S.W.2d at 629.  While both types of actions require plaintiffs to "prevail based upon the strength of [their] own title," if plaintiffs in the present case were seeking relief in a suit for trespass to try title, they would also be required to prove one of the following: "(1) a regular chain of conveyances from the sovereign, (2) a superior title out of a common source, (3) title by limitations, or (4) prior possession, which has not been abandoned."  *Kennedy Con., Inc. v. Forman*, 316 S.W.3d 129, 135 (Tex. App. 2010, no pet.).  When a suit involves rival claims to property, it is a trespass to try title suit.  *See Teon Mgmt., LLC v. Turquoise Bay Corp.*, 357 S.W.3d 719, 727 (Tex. App. 2011, no pet.).

This lawsuit, however, does not directly implicate any issues to be resolved by a trespass to try title suit.  The parties do not contest that plaintiffs hold title to the Property that is the subject of a deed of trust.  Instead, plaintiffs seek adjudication of the validity of the deed of trust.  *See Florey*, 212 S.W.3d at 449 (holding that quiet title claim was not governed by the trespass-to-try title statute because "[t]he . . . suit . . . seeks adjudication of the validity of Florey's deed of trust as it impacts his entitlement to proceeds from the sale of the McConnell property").

- 17 -

liens of the Trust Deed and leaving any obligations under the Note unsecured by any interest in the [Property]."  *Id.*[10]

C

Defendants maintain that plaintiffs have not pleaded any facts demonstrating the strength of their title, focusing instead on whether the assignment of the mortgage was valid.[11]  This argument lacks force.  "It is clear that the claimant must show an interest of some kind, but it is error that the claimant must show fee simple or uncontestable interest to prevail in a suit to remove cloud on title or to quiet title."  *Katz*, 563 S.W.2d at 630; *see also Henry v. Chase Home Fin., LLC*, 2011 WL 6057505, at *5 n.2 (S.D. Tex. Dec. 6, 2011) (denying motion to dismiss quiet title claim based on insufficient allegations of plaintiff's interest because defendant did not explain why allegations that plaintiffs owned property, had been in possession of property, and had paid property taxes was insufficient to plead an interest); *Mortg. Elec. Registration Sys., Inc. v. Groves*, 2011 WL 1364070, at *4 (Tex. App. Apr. 12, 2011, pet. denied) (mem. op.) (holding that plaintiff's allegation that "she owns the property by virtue of her recorded deed" was sufficient).

---

[10]Plaintiffs also allege that "[t]he invalid transfer of the Note to the Trust creates genuine issues as to the rightful present owner/holder of the Note and Trust Deed and subjects Plaintiffs to multiple and unpredictable recoveries or attempts to recover against the subject property."  Pet. 8.  To the extent that this allegation relies on the alleged breach of the PSA, the court has dismissed it for the reasons set out *supra* at § III(B).

[11]Defendants also contend that plaintiffs are basing their claim on the asserted weakness of defendants' title by arguing that the assignment was untimely.  This relates, however, to the alleged breach of the PSA, a ground that the court has dismissed.  *See supra* § III(B).

Defendants also focus on plaintiffs' requested remedies.  Plaintiffs appear to seek two remedies.  First, they ask the court to quiet title in their favor against defendants.  Defendants do not present any arguments that relate to this request.  Because "[t]he effect of a suit to quiet title is to declare invalid or ineffective the defendant's claim to title," *Gordon*, 352 S.W.3d at 42, plaintiffs are in this respect seeking an available remedy.

Second, plaintiffs request that the court free the Property from "the liens of the Trust Deed and leav[e] any obligations under the Note unsecured." Pet. 8.  Plaintiffs cannot obtain this remedy if they prevail on their quiet title claim.  If granted, this remedy would eliminate *any* possible assignee's interest in the note and deed of trust, even that of an assignee who is not a party to this lawsuit and has had no opportunity to contest plaintiffs' claim.

Accordingly, were the court not dismissing plaintiffs' quiet title claim for other reasons, the court would grant in part and deny in part a motion to dismiss based on these additional grounds.

V

The court turns next to plaintiffs' claim for estoppel.[12]

"Generally, Texas law defines estoppel as 'conduct which causes the other party to materially alter his position in reliance on that conduct.'" *Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 311 (5th Cir. 2005) (quoting *Braugh v. Phillips*, 557 S.W.2d 155, 158 (Tex. App. 1977, writ ref'd n.r.e.)).

---

[12]In their petition, plaintiffs entitle their estoppel claim as "Cause of Action: Estoppel/Declaratory Judgment." Pet. 6.

- 19 -

> [T]he doctrine of equitable estoppel requires: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations.

*Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515-16 (Tex. 1998) (citing *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex. 1991)).

Plaintiffs allege that defendants lacked authority to "declare a default, accelerate the debt, appoint a substitute trustee, or conduct a substitute trustee's sale" "[b]ecause the Trust never acquired the Note or Trust Deed," and that "[they] have been subjected to risks, abuses, [and] prejudice, and the proper discharge of the obligations on the Note has been rendered impossible." Pet. 6.[13] Assuming *arguendo* that estoppel is a legally viable claim,[14] plaintiffs do not plead sufficient facts to show how defendants falsely represented or concealed a material fact, whether defendants did so with knowledge, actual or constructive, of the facts and with the intention that the representations or concealed facts be acted on, and whether plaintiffs lacked knowledge or a means of obtaining knowledge of the facts and detrimentally relied on a representation or concealed fact.  Plaintiffs must "plead[] factual content that

---

[13]They also seek to estop defendants from "assert[ing] any present default on the Note . . . or power of sale under the Trust Deed" and seek an order declaring that "Defendants lack any interest under the Note and/or Trust Deed." *Id.* at 7.

[14]"Equitable estoppel is not a cause of action but may be asserted as a defensive plea to bar a defendant from raising a particular defense." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 n.1 (Tex. 2004).  Defendants do not move to dismiss plaintiffs' estoppel claim on this basis.

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Accordingly, were the court not already dismissing plaintiffs' equitable estoppel claim, it would do so on this basis.

## VI

The court now considers plaintiffs' claim for declaratory judgment.[15]

The federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, does not create a substantive cause of action. *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("The federal Declaratory Judgment Act . . . is procedural only[.]") (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). A declaratory judgment action is merely a vehicle that allows a party to obtain "an early adjudication of an actual controversy" arising under other substantive law. *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990). Federal courts have broad discretion to grant or refuse declaratory judgment. *See, e.g., Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the [DJA] has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*,

---

[15]Although plaintiffs filed this lawsuit in Texas state court, "[w]hen a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202." *Redwood Resort Props., LLC v. Holmes Co.*, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007) (Fitzwater, J.).

515 U.S. 277, 286 (1995).  The DJA is "an authorization, not a command."  *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962).  It gives federal courts the competence to declare rights, but it does not impose a duty to do so.  *Id.* (collecting cases).

Defendants maintain that the declaratory judgment claim should be dismissed because plaintiffs have failed to state viable claims.  The court agrees.  *See Turner v. AmericaHomeKey Inc.*, 2011 WL 3606688, at *6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.) (declining to entertain declaratory judgment request because plaintiff failed to plead a plausible substantive claim), *appeal docketed*, No. 12-10277 (5th Cir. Mar. 13, 2012).  Accordingly, were the court not dismissing plaintiffs' declaratory judgment claim for other reasons, it would do so on this ground.

Additionally, were the court not dismissing the claim for other reasons, it would also raise *sua sponte* that, even if plaintiffs could adequately plead a substantive claim, the declaratory judgment action should be dismissed because it duplicates plaintiffs' quiet title claim.[16]  Plaintiffs essentially request that the court declare that defendants have no interest in the property, and therefore lack the authority to declare a default, sell, receive proceeds, transfer title, or release the deed of trust.  Because these issues will be resolved in the quiet title action, a separate declaratory judgment action would be redundant.  *See, e.g., Kougl v.*

---

[16]The court can consider the sufficiency of a complaint and "dismiss an action on its own motion 'as long as the procedure employed is fair.'"  *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)); *see also Coates v. Heartland Wireless Commnc'ns, Inc.*, 55 F.Supp.2d 628, 633 (N.D. Tex. 1999) (Fitzwater, J.).

*Xspedius Mgmt. Co. of Dall./Fort Worth, L.L.C.*, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.); 6 Charles Alan Wright et al., *Federal Practice & Procedure* § 1406, at 30-31 (3d ed. 2012) ("When the request for declaratory relief brings into question issues that already have been presented in plaintiff's complaint and defendant's answer to the original claim, however, a party might challenge the counterclaim on the ground that it is redundant and the court should exercise its discretion to dismiss it."). Accordingly, were the court not dismissing the declaratory judgment claim for other reasons, it would in its discretion dismiss the claim on the ground that it duplicates plaintiffs' quiet title claim.

VII

The court now turns to plaintiffs' breach of contract claim based on the "Non Impound Notice," a claim that has not already been dismissed above.

A

A breach of contract claim under Texas law requires proof of four elements: (1) the existence of a valid contract, (2) plaintiffs' performance of duties under the contract, (3) defendants' breach of the contract, and (4) damages to the plaintiffs resulting from the breach. *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003) (citing *Palmer v. Espey Huston & Assocs.*, 84 S.W.3d 345, 353 (Tex. App. 2002, pet. denied)). Plaintiffs allege in their petition, either "[c]oncurrently or in the alternative," a breach of contract claim against defendants solely on the basis of the "Non Impound Notice" that was attached to the

note,[17] which allegedly obligated the "lender for this mortgage not [to] impound for real estate taxes and homeowners insurance." Pet. 6 & 9.  Plaintiffs assert that they received a letter from Home Loan purporting to increase their monthly mortgage payment of $2,123.43 by 77%, allegedly entirely due to taxes and insurance.  They allege that, due to this conduct, "Defendants[] failed to comply with the terms of the contract and have caused Plaintiffs monetary damages." *Id.* at 9.

B

The court dismisses plaintiffs' breach of contract claim because they have failed to allege that they performed their contractual obligations by remaining current on their mortgage payments until the alleged breach.  *See, e.g., Obuekwe v. Bank of Am., N.A.*, 2012 WL 1388017, at *5 (N.D. Tex. Apr. 19, 2012) (Means, J.) (holding that plaintiff "cannot state a claim for breach of the deed of trust because [plaintiff] admits that she defaulted on the loan," and therefore cannot demonstrate that she performed her duties under the contract) (citing *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009)); *Owens v. Bank of Am., NA*, 2012 WL 912721, at *4 (S.D. Tex. Mar. 16, 2012) (dismissing breach of contract claim because "plaintiffs have undisputedly not performed their contractual obligations because they have not stayed current on their mortgage payments").[18]  This is alone a

---

[17]Plaintiffs do not otherwise contend that defendants breached the note or deed of trust.

[18]Defendants also moved for dismissal on the ground that plaintiffs had failed to plead damages.  After plaintiffs responded that the petition *did* allege monetary damages, defendants did not reassert this position in their reply brief.

sufficient basis on which to dismiss plaintiffs' breach of contract claim. *See Lewis*, 343 F.3d at 544-45 (requiring proof of all four elements).

C

The court also raises *sua sponte* that this claim must be dismissed for two additional reasons.[19] First, plaintiffs fail to plead that defendants are parties to the contract. Defendants "cannot have breached a contract to which [they were] not then a party." *Biggers v. BAC Home Loans Servicing, LP*, 767 F.Supp.2d 725, 729 (N.D. Tex. 2011) (Fitzwater, C.J.). Plaintiffs allege in the facts section of their petition that defendants could not be considered parties to the contract because they were not assignees of First Franklin.[20] Moreover, the petition permits the inference that, rather than defendants, Home Loan (the entity that sent the letter regarding the increased mortgage payments) was a party to the contract, because plaintiffs allege that the "letter injected yet another unidentified party . . . into the discussion of who actually owned the Note." Pet. 6.

Second, plaintiffs do not plead facts demonstrating that *defendants* breached the note. As stated previously, plaintiffs assert that Home Loan sent the letter regarding increased mortgage payment. Plaintiffs also allege that "Defendants, or their agents on their behalf,

---

[19]As the court explains *supra* at note 16, this procedure is permissible, provided it is fair to plaintiffs as the nonmovants.

[20]Although the court can infer that, because the breach of contract claim is asserted "[c]oncurrently or in the alternative," Pet. 9, plaintiffs intend to allege that defendants were parties to the contract, the petition does not *show* that plaintiffs are entitled to relief. *See Iqbal*, 556 U.S. at 679 ("But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'") (quoting Rule 8(a)(2)).

sent written correspondence to Plaintiffs unilaterally increasing their monthly mortgage payment." *Id.* at 9. But plaintiffs fail to plead facts that enable the court to draw the reasonable inference that the actions of Home Loan are attributable to defendants. *See Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.") (citing *Twombly*, 550 U.S. at 556).

Accordingly, the court dismisses plaintiffs' breach of contract claim.

## VIII

Defendants also move in the alternative under Rule 12(e) for a more definite statement.

A party is entitled to a more definite statement when a portion of the pleadings to which a responsive pleading is allowed "is so vague or ambiguous that the party cannot reasonably prepare a response." Rule 12(e). "Whether to grant a motion for a more definite statement is a matter within the discretion of the trial court." *Russell v. Grace Presbyterian Vill.*, 2005 WL 1489579, at *3 (N.D. Tex. June 22, 2005) (Solis, J.) (citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959)).

Defendants move for a more definite statement on several grounds, but each ground is now moot.

First, they assert that the petition fails to identify plaintiffs' compliance with the note and deed of trust, which relates to their breach of contract claim. Because the court has already addressed this contention in defendants' motion to dismiss plaintiffs' breach of contract claim, resulting in dismissal of that claim, this request is denied as moot.

- 26 -

Second, defendants contend that plaintiffs have failed to identify the alleged false representation on which their estoppel claim is based.  The court also denies this request as moot because the court has already considered this argument and dismissed plaintiffs' estoppel claim.

Third, defendants posit that plaintiffs have failed to identify a proper ground to support a request for a declaratory judgment.  This request is also denied as moot because the court has dismissed plaintiffs' declaratory judgment.

Accordingly, the court denies defendants' alternative Rule 12(e) motion for a more definite statement.

IX

Although the court is dismissing plaintiffs' claims, it will permit them to replead.  *See In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.") (internal quotation marks and citation omitted).  Because plaintiffs have not stated that they cannot, or are unwilling to, cure the defects that the court has identified, the court grants them 30 days from the date this memorandum opinion and order is filed to file an amended complaint.

*   *   *

For the reasons explained, the court grants defendants' Rule 12(b)(6) motion, denies

defendants' alternative Rule 12(e) motion as moot, and grants plaintiffs 30 days from the date

this memorandum opinion and order is filed to file an amended complaint.

**SO ORDERED.**

June 26, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE